## HARRIS *et al. v.* HUSON ICE AND MACHINE WORKS.

1. Where A sold to B "one Columbus Iron Works ice plant, complete, second-hand, with a guaranteed capacity of six tons of ice per day of 24 hours, said ice machinery being now located on cars at Ocilla, Ga.," and the purchaser defended an action on notes given for the purchase-money upon the ground, inter alia, that the machinery delivered was not a Columbus Iron Works plant, but consisted of various parts of machinery of other manufacturers assembled together, it was competent for the plaintiff to prove that though some of the minor parts of the machinery were not manufactured by the Columbus Iron Works, yet the substituted parts correlated with the whole and were not of such character as to alter the distinctive character of the machinery as a "Columbus Iron Works plant," and were equal in efficiency in all respects to the parts for which they were substituted.

2. The contentions of the defendants, as made by the pleadings and evi-

dence were fairly submitted; the charge was adjusted to the case, and the evidence is sufficient to support the verdict.

DECEMBER 13, 1911.

Complaint. Before Judge Whipple. Irwin superior court. December 13, 1910.

*Eason & Bull* and *R. M. Bryson,* for plaintiffs in error.

*H. J. Quincey* and *Fulwood & Murray,* contra.

EVANS, P. J. The plaintiff sold to the defendants a second-hand ice plant which was to be delivered to them f. o. b. Abbeville, Alabama. The machinery was shipped by the plaintiff to the defendants at Ocilla, Ga., in accordance with the contract of sale. When it arrived in Ocilla a dispute arose between the defendants and the railroad company over the freight charges, and the machinery was allowed to remain on the cars for several months and until after the first payment under the contract of sale fell due. The plaintiff then entered into a second agreement with the defendants, which was reduced to writing, wherein the first contract of sale was abrogated and the plaintiff contracted to sell to the defendants "one Columbus Iron Works ice plant, complete, second-hand, with a guaranteed capacity of six tons of ice per day of 24 hours, said ice machinery being now located on cars at Ocilla, Ga.," and the defendants contracted to pay $3,000, evidenced by three promissory notes, and also agreed to pay $120.50 in consideration of being relieved of liability on their former contract, which last-named sum was also evidenced by their note. The defendants having defaulted in the payment of their several notes, suit was instituted thereon; and they pleaded: that the plaintiff agreed to superintend the construction of the ice plant, and to demonstrate that its capacity to make ice came up to the warranty; that the machinery was installed under the superintendence of the plaintiff; and after several tests it was found incapable of making six tons of ice per day; that several important parts of the machinery were never supplied; that in the course of the installation they discovered that the machinery was not a Columbus Iron Works plant, but was made up of several parts of machinery of different manufacturers to such an extent that the aggregate plant did not possess the distinctive character of a Columbus Iron Works plant; that upon discovering that the machinery was not a Columbus Iron Works plant and upon the failure of the plaintiff to demonstrate the guaranteed capacity of the ice plant, they tendered it back

to the plaintiff and demanded a rescission of the contract; that upon the refusal of the plaintiff to rescind the contract and take back the machinery, they operated it at a loss, and were never able to produce ice in excess of four tons per day; that they had sustained damage connected with the purchase and operation of the machinery in sundry amounts, and judgment against the plaintiff for these sums was prayed.

1.   The evidence was conflicting as to whether or not there had been an acceptance of the machinery by the plaintiff; as to whether there was a failure of the warranty as to the capacity of the machinery and as to whether the machinery was of the character described in the contract of sale.   Upon the latter feature the plaintiff offered proof tending to show that the main machinery was that manufactured by the Columbus Iron Works, and that though certain minor parts were manufactured by other manufacturers, these parts were equal in every respect in quality and adaptability to those for which they were substituted, and that the plant which they delivered was a Columbus Iron Works plant.   Objection was made to testimony tending to show that there was no difference in efficiency between a certain part of the machinery which had been supplied and that for which it substituted; the objection being that the written contract of sale described the subject-matter of the sale as a Columbus Iron Works plant, and this testimony tended to vary the terms of the written contract.   Specific goods may be sold by description; and if the specific existing chattel is sold by description, and does not correspond with that description, the seller fails to comply, not with a warranty or collateral agreement, but with the contract itself, by breach of a condition precedent.   And the question is whether the descriptive statement is an identification of the chattel or whether it amounts to a collateral warranty.   Benjamin on Sales, 315.   The subject-matter of this sale was a second-hand ice plant on the cars at a place where the purchasers had ordered it under a previous contract; the purchasers contracted to buy that particular machinery, and the description that it was of a particular manufacture was probably intended more as a collateral warranty of the character of the chattel than for purposes of identification.   If the specific name of the ice plant be treated as matter of description, then it becomes a question of identifying the article as that described, and parol adminicular

proof is admissible for that purpose. This inquiry is broad enough to include an investigation as to what constitutes the article as described. In the sale of second-hand machinery of a particular manufacture it is competent to show that a minor part is an adequate substitute for the original, and that, notwithstanding such substitution, the machinery still preserves the distinctive characteristic of its original manufacture. If a second-hand Baldwin locomotive is sold, a delivery of a Baldwin locomotive would satisfy the description, although it may be equipped with a bell or whistle of a different manufacture. If we treat the words "Columbus Iron Works plant" as words of collateral warranty, then it is competent to inquire whether the substituted parts were of such character as to change the distinctive character of the chattel so as to amount to a breach of the warranty. The English case of Weiler v. Schilizzi, 25 L. J. C. P. 89, is clear authority on this point. There A undertook to supply B with certain parcels of linseed, which he warranted should be "Calcutta linseed," and supplied him with linseed containing 15 per cent. of other seeds. It was proved that Calcutta linseed at the time the contract was made contained usually from 2 to 3 per cent. of other seeds, and it was held that it was proper to inquire whether the mixture of 15 per cent. of other seeds was such an adulteration or admixture of foreign substances as to alter the distinctive character of the article and prevent its being salable as "Calcutta linseed." The testimony to which objection was made was clearly relevant.

2. Several assignments of error complain that the court failed to properly submit the various contentions of the defendants, and that the evidence did not authorize an instruction on the legal effect of an acceptance of the machinery. We do not think these criticisms are meritorious. The charge was fair, full, and adjusted to ·the various issues made by the pleadings and evidence. The verdict is supported by the evidence, and has the endorsement of the trial judge, and no sufficient reason is shown to vacate it.

*Judgment affirmed. All the Justices concur, except Hill, J., not presiding.*